**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| CARPENTERS PENSION TRUST FUND OF KANSAS CITY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 20-00603-CV-W-SRB |
| LANKFORD ENTERPRISES, INC., | ) ) ) | |
| Defendant. | ) | |

**ORDER**

Before this Court are cross-motions for summary judgment. Defendant Lankford

Enterprises, Inc. ("Lankford") moves for summary judgment. (Doc. #49.) Plaintiffs Albert L.

Bond, as Trustee of the Carpenters Pension Trust Fund of Kansas City; Donald E. Greenwall,

III, as Trustee of the Carpenters Pension Trust Fund of Kansas City; Brian Murphy, as Trustee of

the St. Louis-Kansas City Carpenters Regional Annuity Fund; Virgil Kloth, as Trustee of the St.

Louis-Kansas City Carpenters Regional Annuity Fund and the Carpenters Health and Welfare

Trust Fund of St. Louis; the St. Louis-Kansas City Carpenters Regional Council ("the Union");

the Carpenters Pension Trust Fund of Kansas City; the Carpenters Health and Welfare Trust

Fund of St. Louis; the Carpenters Vacation Trust Fund of St. Louis; the Carpenters Joint

Training Fund of St. Louis; the St. Louis-Kansas City Carpenters Regional Annuity Fund; the

Carpenters Vacation Trust Fund of St. Louis; the Carpenters Joint Training Fund of St. Louis;

the Carpenters Health and Welfare Trust Fund; the Carpenters Vacation Trust Fund; and the

Carpenters Joint Training Fund of St. Louis (collectively, "Plaintiffs") also moved for summary

judgment. (Doc. #47.) For the reasons stated below, Lankford's motion is DENIED, and

Plaintiffs' motion is GRANTED.

1

## I.    FACTUAL BACKGROUND

This case is a collection action, under the Employee Retirement Income Security Act ("ERISA"), brought by Plaintiffs to recover allegedly delinquent contribution payments owed by Lankford.  For the purposes of resolving the pending motions, the Court deems the following facts uncontroverted.[1]

Plaintiffs are a collection of individual Trustees ("the Trustees"), a collection of Trust Funds ("the Funds"), and the Union.  The Funds were established pursuant to the Labor Management Relations Act ("LMRA"), Section 302, 29 U.S.C. § 186, and are employee benefit plans within the meaning of Section 2 of ERISA, 29 U.S.C. § 1002.  The Union is a labor organization within the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. § 152(5), which represents employees within the meaning of Section 301 of the LMRA and is an "employee" organization within the meaning of Section 3(4) of ERISA.

Lankford is a corporation that specializes in athletic floor installation and does business in the Kansas City Metropolitan Area.  Lankford's employees repair, install, sand, finish, and maintain athletic floors.  Lankford employs both union and non-union employees who "sometimes do the same or similar work."  (Doc. #50, p. 10.)[2]  Additionally, Lankford's non-union employees are "helpers, laborer[s], finishers, and sanders" that assist in carpentry tasks. (Doc. #50, p. 10.)

The Union and Lankford have entered into various agreements obligating Lankford to contribute to the Funds, which are third-party beneficiaries to these agreements.  On April 10,

---

[1] The relevant facts are taken from the record, including the parties' briefs and exhibits.  Additional facts are addressed in Section III.  The parties' respective motions raise similar facts and arguments.  The Court has reviewed all briefs and exhibits pertaining to both motions for summary judgment, and the rulings herein dispose of both motions.  To provide context and/or where applicable, this Order includes facts and arguments from both parties' briefs.  Only those facts necessary to resolve the pending motions are discussed below and are simplified to the extent possible.

[2] All page numbers refer to pagination automatically generated by CM/ECF.

2

1978, Lankford entered the Carpenters Joint Agreement ("CJA") with Builders' Association of Missouri ("the Association") and the Union.[3]  (Doc. #50-1.)  The CJA states its "jurisdiction of the Union over work to be that work which has historically and traditionally been performed heretofore by members of the [Union], in the geographical area of this Agreement."  (Doc. #50-1, p. 2.)

Additionally, the Union and Lankford are subject to collective bargaining agreements ("CBA").  There are two applicable CBAs with corresponding sets of addendums: (1) the 2013 CBA in effect at the beginning of the relevant audit period, with three Kansas City Area Addendums ("the 2013 CBA"), and (2) the 2017 CBA, which came into effect on August 1, 2017, with three Kansas City Area Addendums ("the 2017 CBA").  The 2017 CBA is a renewal of the 2013 CBA, and the Court will note any material differences between the two.  Like the CJA, the CBAs also require Lankford to contribute to the Funds.  The 2013 and 2017 CBAs both define their scope and set out contribution payment rates in their corresponding addendums.

The 2013 and 2017 CBAs define the scope of work for all KC Areas as "the work which has historically and traditionally been performed heretofore by members of the Union Brotherhood of Carpenters and Joiners of America in the geographical jurisdiction of this Agreement."  (Doc. #48-9, pp. 1, 28, 55; Doc. #48-11, pp. 1, 13, 27.)  The parties agree that the work "historically and traditionally" performed by the Union is "all kinds of work being performed by the members of the Union . . . all those engaged in the operation of woodworking or other machinery required in the fashioning, milling, or manufacturing of products used in the trade, or engaged as helpers[.]"  (Doc. #50, p. 3.)

---

[3] Lankford originally entered into the CJA with The United Brotherhood of Carpenters and Joiners of America, Kansas City District Council and Vicinity, AFL-CIO.  On July 20, 2010, the United Brotherhood of Carpenters and Joiners of America, Kansas City District Council and Vicinity, AFL-CIO merged with the Carpenter's Council of St. Louis to form the Carpenters' Regional Council, which will also be referred to *infra* as "the Union."

Lankford is obligated to contribute to the Funds for its "employees."  The CJA provides

that Lankford shall contribute "for each hour worked . . . by each employee."  (Doc. #50-1, p. 3.)

The 2013 and 2017 CBAs require Lankford to contribute to the Funds based on "each hour

worked by each employee covered by the Agreement[.]"  (Doc. #48-8, p. 5; Doc. #48-10, p. 5.)

The CJA, 2013 CBA, and 2017 CBA permit Plaintiffs, upon request, to inspect "all other records

relevant to . . . determining whether the [employer's] obligations [to make payments] have been

faithfully performed."  (Doc. #50-1, p. 4; Doc. #48-8, p. 6; Doc. #48-10, p. 6.)  To ensure that

Lankford correctly contributes to the Funds, Lankford is required to maintain records sufficient

to determine the amount of contributions are due.

Lankford "recognizes the Union as the sole and exclusive bargaining representative for

employees performing work covered by this Agreement."  (Doc. #48-8, p. 1; Doc. #48-10, p. 1.)

An employee is considered a non-union employee if he or she does not have a Union

authorization card or does not pay Union dues.  However, the agreements require non-union

members to pay 80% of monthly dues as a service charge for the Union's administration of the

contract and representation.  Plaintiffs determine which of Lankford's employees are union

members by asking individuals whether they have a Union card or whether they pay dues.

Plaintiffs employ the Construction Benefits Audit Corporation ("CBAC") to conduct

audits of Lankford's contributions.  Before 2019, the audits did not include Lankford's non-

union employees.  For example, the 2014 audit did not require contributions for non-union

employees, who were classified as "finishers."  (Doc. #50-13, p. 5.)  Until 2019, Lankford

contributed to the Funds for its union employees without objection by Plaintiffs.

On May 7, 2019, Plaintiffs directed CBAC to conduct an audit for the period of January

1, 2017, to March 31, 2019, accounting for hours and payments for all employees, both union

4

and non-union.  At an August 13, 2019, collection committee meeting, Plaintiffs again instructed CBAC to calculate hours and payments for all of Lankford's employees, regardless of union status.  Lankford received a final revised audit letter from CBAC on August 16, 2021, stating they failed to contribute $351,248.37 to the Funds for the relevant audit period.[4]  The parties do not dispute that Lankford made the required contributions for Lankford's two union carpenters: Donald. L Walker and Michael S. Parson.

Plaintiffs brought this suit on July 31, 2020, under ERISA, 29 U.S.C. § 1132 and § 1145. Plaintiffs allege Lankford was obligated to and has failed to make contributions to the Funds for Lankford's non-union employees.  Plaintiffs seeks to collect a total of $437,394.49 from Lankford: $244,910.82 in delinquent contributions, $23,654.87 in dues, $48,982.17 in liquidated damages, $29,490.70 in interest, $54,145.00 in audit costs, and $36,210.93 in attorney's fees.[5] Plaintiffs allege that the amount of contributions owed to Plaintiff St. Louis-Kansas City Carpenters Regional Annuity Fund has yet to be determined as Lankford has not produced payroll documentation since March 31, 2019.  All parties have now moved for summary judgment, and their arguments are addressed below.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of identifying "the basis for its motion and must identify those portions of the record which it

---

[4] The parties note that the audit letter was revised several times due to discovered information regarding certain hours and payments that were made outside the relevant geographic jurisdiction.

[5] The amounts alleged by Plaintiffs are for the audit period: January 1, 2017, to March 31, 2019.  The applicable agreements provide for a method of calculation of liquidated damages, interest, audit costs, and attorney's fees. Lankford does not dispute Plaintiffs' calculation of the amounts, just their underlying liability for delinquent contributions.

believes demonstrate the absence of a genuine issue of material fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (cleaned up).  If the moving party makes this showing, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."  *Id.* (quotation marks omitted).  The nonmovant "may not rest upon the mere allegations or denials of the . . . pleadings."  Fed. R. Civ. P. 56(e).  If there is a genuine dispute as to certain facts, those facts "must be viewed in the light most favorable to the nonmoving party."  *Id.*

### III.    DISCUSSION

Plaintiffs seek to enforce Section 502 and 515 of ERISA, 29 U.S.C. § 1132 and § 1145, compelling Lankford to pay $437,394.49 consisting of delinquent contributions for the period of January 1, 2017, to March 31, 2019, as well as liquidated damages, interest, audit costs, and attorney's fees.  ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions *in accordance with the terms and conditions of such plan or such agreement*.

29 U.S.C. § 1145 (emphasis added).

Lankford does not dispute that it is obligated to contribute to the Funds.  However, Lankford disputes that it owes further contributions.  Lankford contends that it is only required to contribute for its union employees, which it has already paid, and that it is not liable for contributions on behalf of its non-union employees.

As a threshold issue, the parties dispute whether the CJA or CBAs controls Lankford's contribution obligations.  The parties agree that the CJA and CBAs are binding.[6]  (Doc. #48-8, p.

---

[6] By signing the CJA, Lankford agreed to "be bound by all subsequent agreements between the [Builder's Association of Kansas City] and Union unless [Lankford] gives both parties thereto a written notice of withdrawal of this stipulation[.]"  (Doc. #50-1, p. 15.)  The CBA and addendums are executed by the Association and the Union.

15; Doc. #48-10, p. 15.) Because the parties agree that Lankford is subject to the CJA and CBAs, the Court will analyze any conflicting provisions between the two as they arise.

### A.      Lankford's Liability for Non-Union Employees

Plaintiffs and Lankford put forth alternative interpretations of Lankford's obligation to contribute to the Funds under the CJA and CBAs. Lankford interprets the CJA and CBAs to require contributions based on union-affiliation. Plaintiffs interpret the CJA and CBAs to require contributions based on the nature of the employee's work.

"We interpret collective-bargaining agreements . . . according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). "Under Missouri law we must enforce a contract as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous."[7] *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 590 (8th Cir. 1997) (applying Missouri law). "Unless the contract is ambiguous, the parties' intent is determined by the language of the contract alone[.]" *Baum v. Helget Gas Prod., Inc.*, 440 F.3d 1019, 1023 (8th Cir. 2006).

"An ambiguity exists when a contract is susceptible to more than one reasonable interpretation." *Farmland*, 111 F.3d at 590 (citations omitted). "In ascertaining whether a contract is reasonably susceptible of more than one construction, words are to be given their plain and ordinary meaning as understood by a reasonable, average person." *Cent. States, Se. & Sw. Areas Pension Fund v. Indep. Fruit & Produce Co.*, 919 F.2d 1343, 1350 (8th Cir. 1990) (citations omitted). "Recourse to the ordinary, dictionary definition of words is not only

---

[7] The parties do not dispute, and the Court finds, that Missouri law applies to the interpretation of the various agreements between the parties.

reasonable, by may be necessary." *Id.* (citations omitted). "No terms [in a collective bargaining agreement] should be meaningless." *Allied Sales Drivers and Warehousemen, Loc. No. 289, Int'l Bhd. Of Teamsters v. Sara Lee Bakery Group*, 746 F.3d 342, 346 (8th Cir. 2014). "Although a court may look to known customs or usages in a particular industry to determine the meaning of a contract, the parties must prove these customs or usages using affirmative evidentiary support[.]" *M & G Polymers*, 574 U.S. at 439.

The Court finds that the CJA and CBAs unambiguously require Lankford to contribute to the Funds on behalf of all employees, both union-affiliated and non-union affiliated employees. The language, standing alone, strongly supports that conclusion. The CJA, 2013 CBA, and 2017 CBA all state Lankford must contribute to the Funds for each hour worked by each "employee" covered by the agreements. (Doc. #50-1, p. 3; Doc. #48-8, p. 5; Doc. #48-10, p. 5.) The CJA and CBAs do not explicitly define the term "employee." In considering what "employee" means in this context, the Eighth Circuit has turned to whether the language of the collective bargaining agreements as a whole "indicates that employee is . . . synonymous with union member." *Nesse as Trustees of Minn. Laborers Health & Welfare Fund v. Green Nature-Cycle, LLC*, 7 F.4th 769, 776–777 (8th Cir. 2021) (quotations omitted). If the Court finds that "employee is not synonymous with union member," then "the CBA unambiguously require[s] [the employer] to contribute to the Funds for non-union employees." *Id.* (quotations omitted).

Here, the CJA and CBAs do not indicate that "employee" and "union member" are synonymous; meaning, Lankford's obligation to contribute to the Funds for each "employee" is not limited to union-member employees only. The CJA and CBAs' "Union Security" clauses state that "a condition of employment that all employees [. . .] covered by this Agreement [. . .] shall be members in good standing" and that "[t]he failure of any employee to become a member

8

of the Union . . . shall obligate the Employer upon written notice to the Union . . . to forthwith

discharge such person." (Doc. #48-8, p. 3; Doc. #48-10, pp. 2–3; Doc. #50-1, pp. 2–3.) The

"clause's directive that 'each Employee covered by this Agreement' become a union member

indicates that 'Employees covered by this agreement' may exist prior to and apart from union-

member employees." *Nesse*, 7 F.4th at 777 (citations and quotations omitted).[8]

"Interpreting the term 'Employees' to mean only 'union-member employees' effectively

interprets the . . . clause to require union members to become union members, and renders the

clause meaningless." *Id*. (citations and quotations omitted). "'[N]o terms [in a CBA] should be

meaningless.'" *Id*. (citing *Sara Lee Bakery*, 746 F.3d at 346.) Because an interpretation of

"employee" to mean "union member" would render the Union Security clauses meaningless, the

Court must interpret employee to encompass both union and non-union member employees.

Thus, Lankford's obligation to contribute for covered "employees" encompasses both union and

non-union employees.

### B.     "Covered Employees"

Lankford is only obligated under the CJA and CBAs to contribute to the Funds for its

employees that are covered by the agreements, necessarily meaning that there are some

employees not covered. Lankford argues that the CJA and CBAs only cover union employees,

an argument the Court has already rejected. Plaintiffs argue that employees covered by the

agreements if they are performing "covered work." The CJA and CBAs' language supports

Plaintiffs' argument.

The jurisdictional clauses in the CJA and CBAs states the Union has jurisdiction over

---

[8] The CBAs further distinguish "employee" and "member," stating that no Union representative shall "condone a strike" "by any of its employees covered" "nor will the Union in any way support any action of its members in engaging in any of the same[.]" (Doc. #48-8, p. 7; Doc. #48-10, p. 7.)

"that work which had historically and traditionally been performed heretofore by members of [the Union]" in the geographical area. (Doc. #50-1, p. 13; Doc. #48-9, p. 1; Doc. #48-11, p. 1.) The CJA and CBAs do not define what work has been "historically and traditionally" performed and do not mention the phrase elsewhere. The parties agree that the work "historically and traditionally" performed by the Union is "all kinds of work being performed by the members of the Union . . . all those engaged in the operation of woodworking or other machinery required in the fashioning, milling, or manufacturing of products used in the trade, or engaged as helpers[.]" (Doc. #50, p. 7.) The parties further agree that employees that are engaged in woodworking, operating related machinery are performing "covered work." Additionally, because the parties agree that those "engaged as helpers" are doing work "historically and traditionally" performed by the Union, the Court finds that helping the previously mentioned tasks are also performing "covered work." (Doc. #50, p. 7.)

Under the uncontroverted meaning of "historically and traditionally," Lankford is required to contribute for all its employees because they all engage in covered work. Lankford contends that their union employees do carpentry work, and their non-union employees are helpers, laborers, finishers, and sanders that assist union employees doing carpentry work. Accordingly, both union and non-union employees are engaged in work historically and traditionally done by the Union as they are engaged in "woodworking" or as "helpers." (Doc. #50, p. 7.) The CJA, 2013 CBA, and 2017 CBA obligate Lankford to contribute to the Funds for each hour worked by each employee covered by the agreements. (Doc. #50-1, p. 3; Doc. #48-8, p. 5; Doc. #48-10, p. 5.) As such, Lankford is required to contribute to the Funds on behalf of all employees, both union and non-union. As Lankford failed to establish a genuine dispute of material fact as to liability, Plaintiffs are entitled to summary judgment on the issue.

### C. Lankford's Improper Windfall Argument

Lankford argues that it should not be required to contribute for its non-union employees as it would be an improper windfall for Plaintiffs. Lankford contends that a contribution to the union for non-union employees would be improper as the non-union employees would not benefit from any contribution to the Funds. Lankford relies on the Third Circuit's position stating that "[i]f the [non-union] employees cannot assert [claims for benefits], then a judgment for the Funds would compel [the employer] to contribute to plans which its employees obtained no benefits in the past and are powerless to derive any future benefits." *Agathos v. Starlike Motel*, 977 F.2d 1500, 1507 (3rd Cir. 1992). In that situation, "[a] judgment for the Funds . . . would be a pure windfall." *Id*.

However, Lankford fails to address a step in the Third Circuit's analysis. In *Agathos*, the Third Circuit could not "discern from the record which employees, if any, presently could bring a valid claim for benefits accruing during the period for which contributions are now sought." *Id*. Further, "[s]ince an employer ordinarily would be required to make contributions pursuant to a facially valid agreement covering all employees, [the employer] will bear the burden on this issue. . . .[and] may avoid contributions only by establishing that [each] employee no longer has a colorable claim for benefits." *Id*.

Lankford has not satisfied this burden and is thus required to contribute for all non-union employees. Here, the Court has determined that Lankford is required to contribute for all employees regardless of union status. Under *Agathos*, in order to avoid contributions, Lankford must show that each non-union has no colorable claim to obtain benefits accruing during the relevant audit period. *Id*. Lankford has not presented evidence to create a genuine dispute of material fact that any individual employee is not entitled to such benefits. As such, Lankford's

11

argument fails, and Plaintiffs are entitled to summary judgment.

### D. Lankford's Affirmative Defenses

Plaintiffs note that Lankford asserts several affirmative defenses in their answer: improper windfall,[9] which was rejected above, failure to exhaust administrative remedies, and failure to mitigate damages. "[C]ourts recognize only two defenses to a collection action: that the pension contributions are themselves illegal or that the collective bargaining agreement is void." *Indep. Fruit*, 919 F.2d at 1349 (citations omitted). The law does not support the affirmative defenses of failure to exhaust administrative remedies or failure to mitigate damages as Lankford does not contend the contributions are illegal or that the agreements are void. Further, Lankford does not discuss or re-assert these defenses in their briefing. As such, the court will not address their merits.

Lankford claims it is entitled to summary judgment as Plaintiffs have waived their rights to bring this claim. Waiver is a "voluntary and intentional relinquishment of a known right." *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992) (citing J. Calamari and J. Perillo, *The Law of Contracts* § 11–29(c) at 491 (3d ed. 1987). Lankford argues that by requiring contributions for only union employees for nearly 20 years, Plaintiffs have waived any right to claim contributions for non-union employees. Plaintiffs disagree that this conduct waived their rights under the CJA and CBAs.

Under Section 515, a suit brought by a Trustee cannot be challenged by "defenses not apparent from the face of the [collective bargaining] [a]greement." *Indep. Fruit*, 919 F.2d at 1349 (citations and quotations omitted). ERISA supersedes all state laws relating to employee benefit plans. 29 U.S.C. § 1144(a); *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146

---

[9] Lankford initially asserts this defense characterized as an equitable estoppel defense but clarifies in their briefings that they are referring to improper windfall.

(2001).  Congress "added [Section] 515 to ERISA in 1980 to deal with . . . collection problems." *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1152 (7th Cir. 1989).

The Eighth Circuit is undecided on whether a waiver is a proper defense in a claim for delinquent contributions under ERISA.  *Farley*, 979 F.2d at 659. ("Even assuming that a waiver of policy provisions could be asserted in an ERISA case, a point we do not decide . . .").  As the Eighth Circuit has stated that the only defenses to an ERISA action are that the contributions are illegal or the underlying collective bargaining agreement is void, this Court is persuaded by other district courts in the Eighth Circuit finding that waiver is precluded under Section 515.  *Indep. Fruit*, 919 F.2d at 1349; *see Constr. Indus. Laborers Pension Fund v. MWE Servs., Inc.*, No. 06-6007-CV-SJ-GAF, 2006 WL 8438364 at *2 (W.D. Mo. Oct. 18, 2006) ("The law is clear that . . . contract defenses are barred . . . [T]his Court concludes the defense[] of waiver . . . [is] precluded . . . under § 515 as a matter of law); *see Boilermaker-Blacksmith Nat'l Pension Tr. v. Elite Mech. & Welding, LLC*, No. 5:20-CV-06021-SRB, 2020 WL 2843230 at *5 (W.D. Mo. June 1, 2020) (holding the same).

Limiting the defenses available to an ERISA claim is in accord with other circuit court's positions on the matter.  *See HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996) (refusing to allow an estoppel defense to an ERISA claim); *see also Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2nd Cir. 1990) (citations omitted); *see also Gerber*, 870 F.2d at 1151 ("[D]efenses going to the very existence of the agreement are not prohibited by section 515");  *see also Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974) ("[A] union's [failure] to adequately represent these nonunion employees may give rise to an unfair labor practice charge . . . but, in absence of a clearly expressed contractual intent to the

contrary, it cannot be an adequate defense by an employer against a third-party beneficiary trustee").

In *Farley*, the Eighth Circuit declined to expressly decide whether waiver could be asserted in the ERISA context; however, the court assumed it could and considered the merits of that defense in the alternative. *Farley*, 979 F.2d at 659. Here, even if the defense of waiver was permissible, Plaintiffs did not waive their rights to delinquent contributions. Lankford contends that "for more than 17 years, the Fund Trustees knew that Lankford only contributed for its union carpenter employees" which "led Lankford to believe that Lankford properly contributed fringe benefits for nearly two decades." (Doc. #50, p. 19–21.) The standard for waiver in this context is whether Plaintiffs expressed intent to surrender its rights to enforce Lankford's obligation to contribute on behalf of its nonunion employees. *Farley*, 979 F.2d at 659 (holding that waiver requires a "voluntary and intentional relinquishment of a known right") (citing J. Calamari and J. Perillo, *The Law of Contracts* § 11–29(c) at 491 (3d ed. 1987). Although the parties dispute whether Plaintiffs knew of their right to enforce contributions for Lankford's non-union employee, their knowledge of that right, and choice not to exercise it, is not dispositive in this context.

In *Farley*, the Eighth Circuit found that unless a party "expresses any intention to surrender its right to enforce" a collective bargaining agreement policy and the opposing party "offers any evidence of any such an intention," a party does not waive "its right to enforce certain provisions of the policy." *Farley*, 979 F.2d at 659. Like *Farley*, Lankford has not produced evidence that Plaintiff had any intent to relinquish the non-union employee's rights to contributions. Even if Lankford's waiver defense is not barred by Section 515, Lankford has not shown it is entitled to summary judgment or that there is a genuine dispute of material facts as to

whether Plaintiffs expressed intent to surrender their rights to bring this claim.  Therefore,

Plaintiffs are entitled to summary judgment.

### E.    Damages

As discussed above, Plaintiffs are entitled to summary judgment because, as a matter of

law, Lankford is required to contribute for its non-union employees.  Plaintiffs allege they are

entitled to $437,394.49: $244,910.82 in unpaid contributions, $23,654.87 in dues, $48,982.17 in

liquidated damages, $29,490.70 in interest, $54,145.00 in audit costs, and $36,210.93 in

attorney's fees.  ERISA empowers Plaintiffs to collect all categories of damages sought.  29

U.S.C. § 1132(g)(2), provides:

> In any action under this subchapter by a fiduciary, for or on behalf of a plan, to
> enforce section 1145 of this title in which a judgment in favor of the plan is
> awarded, the court shall award the plan—
> (A) the unpaid contributions;
> (B) interest on the unpaid contributions;
> (C) an amount equal to the greater of—
> > (i) unpaid contributions
> > or
> > (ii) liquidated damages provided for under the plan in an amount not in
> > excess of 20 percent (or such higher percentage as may be permitted under
> > Federal or State law) of the amount determined by the court under
> > subparagraph (A);
> (D) reasonable attorneys' fees and costs of the action to be paid by the defendant,
> and
> (E) such other legal or equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be
> determined by using the rate provided under the plan, or, if none, the rate
> prescribed under section 6621 of Title 26 [Internal Revenue Code section 6621].

Further, Lankford disputes its underlying liability but does not dispute the amount of

damages owed if it is in fact found to be liable.  As the amounts are undisputed, Plaintiff is

entitled to $437,394.49, consisting of delinquent contributions and dues, liquidated damages,

interest, audit costs, and attorney's fees, as determined by the parties' agreements.[10]  Plaintiff

Carpenters Pension Trust Fund of Kansas City is entitled to $126,513.63 in delinquent

contributions, $25,302.73 in liquidated damages, $15,248.22 in interest, and $18,684.84 in

attorney's fees.  Plaintiff Carpenters Health and Welfare Trust Fund of St. Louis is entitled to

$97,798.18 in delinquent contributions, $19,559.64 in liquidated damages, $11,756.64 in

interest, and $14,484.37 in attorney's fees.  Plaintiff Carpenters Vacation Trust Fund of St. Louis

is entitled to $13,822.00 in delinquent contributions, $2,764.40 in liquidated damages, $1,671.33

in interest, and $2,027.81 in attorney's fees.  Plaintiff Carpenters Joint Training Fund of St.

Louis is entitled to $6,777.01 in delinquent contributions, $1,355.40 in liquidated damages,

$814.51 in interest, and $1,103.91 in attorney's fees.  The Union is entitled to $23,654.87 in

dues.

The Court notes that Plaintiffs claim the amount of delinquent contributions to Plaintiff

St. Louis-Kansas City Carpenters Regional Annuity Fund "has yet to be determined, as

Defendant has refused to produce payroll documentation from March 31, 2019 to date."  (Doc.

#48, p. 9.)  The Court also notes that discovery closed on July 30, 2021, and Plaintiffs did not file

a motion to compel the payroll documentation.  Nonetheless, for the purposes of ensuring a

complete record, the Court orders additional briefing on the issue of contributions owed to

Plaintiff St. Louis-Kansas City Carpenters Regional Annuity Fund.

---

[10] "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citations omitted).  The Court has considered the required factors. *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983); *see also Timber Ridge Escapes, LLC v. Quality Structures of Ark., LLC*, No. 17-cv-03169-MDH, 2020 WL 4717622, at *1 (W.D. Mo. Aug. 13, 2020).  The Court finds that the award of attorney's fees in the case is appropriate.

## IV.    CONCLUSION

For the reasons stated above, Lankford's Motion for Summary Judgment (Doc. #49) is **DENIED**.  Plaintiffs' Motion for Summary (Doc. #47) is **GRANTED**, and Plaintiffs are awarded $437,394.49: $244,910.82 in delinquent benefit contributions (as distributed above), $23,654.87 in dues (as distributed above), $48,982.17 in liquidated damages (as distributed above), $29,490.70 in interest (as distributed above), $54,145.00 in audit costs, and $36,210.93 in attorney's fees.  Further, the parties are **ORDERED** to submit additional briefing regarding contributions owed to Plaintiff St. Louis-Kansas City Carpenters Regional Annuity.  Plaintiffs shall file their briefs, no more than 10 pages in length, on or before December 6, 2021.  Defendants shall file its response, no more than 10 pages in length, on or before December 20, 2021.  Plaintiffs shall file their reply, no more than 5 pages in length, on or before January 3, 2021.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: November 5, 2021